IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


R. CASPER ADAMSON,
    Petitioner,

vs.                                  Case No. 3:08cv225/MCR/EMT

WALTER A. McNEIL,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the court on Petitioner's habeas petition filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer (Doc. 15), and Petitioner filed an amended reply (Doc. 21).

       After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief, and that the petition is without merit and should be denied.

I.       BACKGROUND AND PROCEDURAL HISTORY

       Petitioner is a state inmate currently incarcerated at Santa Rosa Correctional Institution.  He challenges the Department of Corrections' use of Form DC6-229A, the Close Management Daily Record of Segregation, to evaluate inmates' eligibility to earn incentive gain time on the ground that it violates due process in the following ways:  (1) the administrative rules do not permit use of 229A's to evaluate security ratings, therefore use of the forms is an invalid exercise of authority delegated to the DOC by state law, (2) inmates are seldom provided notice of unsatisfactory entries on their 229A's and, therefore, have little opportunity to timely contest the entries, and (3) inmates are never permitted to inspect their 229A's (Doc. 1 at 4–4A; Doc. 21 at 15).  As relief, Petitioner

seeks an award of twenty (20) days of incentive gain time for each month in which he would have earned such gain time but for unsatisfactory 229A entries (*id.* at 6).

Respondent contends Petitioner failed to exhaust his state court remedies (Doc. 15 at 7–12). Respondent additionally contends Petitioner is not entitled to habeas relief because Petitioner does not have a constitutionally protected liberty interest in the type of form used to determine his security rating, which is one component considered in determining an inmate's monthly gain time award (*id.* at 12–13).

II.     ANALYSIS

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. Petitioner's first ground for relief is not cognizable in federal habeas. Petitioner contends the DOC is exceeding its discretion under state law by using the 229A forms to determine security evaluations because neither state law nor state administrative regulations authorize the use of 229A's to determine security evaluations. It is well established that federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 479–80, 116 L. Ed. 2d 385 (1991); Wainwright v. Goode, 464 U.S. 78, 83–84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983). Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief. *See* Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.") (quoting Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted). In the instant case, Petitioner's claim that the DOC exceeded its authority under state law by using the 229A form is based purely in state law, despite his couching the claim in terms of due process; therefore, his claim is not cognizable in federal habeas.

Additionally, Petitioner has failed to establish a due process violation with respect to the lack of notice of unsatisfactory entries on his 229A's and the DOC's failure to permit inmates to inspect

their 229A's. Where a prison disciplinary decision may result in the loss of earned good time credits, the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), held that the inmate must receive: (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.*, 418 U.S. at 564–66. In a subsequent case, the Supreme Court addressed the quantum of evidence necessary to support the factfinder's decision. In Superintendent, Mass. Correctional Inst. v. Hill, 474 U.S. 445, 455–56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985), the Court held: "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.*, 472 U.S. at 454 (citation omitted). In cases where a disciplinary decision does not result in the loss of gain time, due process protections do not attach. *See* Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995). In Sandin, the Court also considered the petitioner's argument that the disciplinary decision affected the duration of his sentence because a record of prison misconduct could affect his eligibility for parole. *Id.* at 487. The Court observed that nothing in state law required the parole board to grant parole in the absence of prison misconduct, and the decision to grant parole "rest[ed] on a myriad of considerations." *Id.* The Court concluded that "[t]he chance that a finding of misconduct will alter the balance [in consideration of parole] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*

Following Sandin, a number of Circuit Courts have held that there is no liberty interest and, therefore, no due process protection in the mere opportunity to earn gain time. *See* Abed v. Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000) (although inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that convicted prisoner with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the opportunity to earn good time

credit); Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (applying Sandin and holding that the loss of the opportunity to earn gain time is not a constitutionally protected liberty interest).

>Florida law provides the following, with respect to incentive gain time:

>(1)  The department is authorized to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities, and to reward prisoners who perform outstanding deeds or services.

>(2)(a)  The department shall establish for each prisoner sentenced to a term of years a "maximum sentence expiration date," which shall be the date when the sentence or combined sentences imposed on a prisoner will expire.  In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.
>. . . .
>(3)(a)  The department shall also establish for each prisoner sentenced to a term of years a "tentative release date" which shall be the date projected for the prisoner's release from custody by virtue of gain-time granted or forfeited as described in this section.  The initial tentative release date shall be determined by deducting basic gain-time granted from the maximum sentence expiration date. Other gain-time shall be applied when granted or restored to make the tentative release date proportionately earlier; and forfeitures of gain-time, when ordered, shall be applied to make the tentative release date proportionately later.
>. . . .
>(4)(b)  For each month in which an inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant incentive gain-time in accordance with this paragraph.  The rate of incentive gain-time in effect on the date the inmate committed the offense which resulted in his or her incarceration shall be the inmate's rate of eligibility to earn incentive gain-time throughout the period of incarceration and shall not be altered by a subsequent change in the severity level of the offense for which the inmate was sentenced.
>. . . .
>1.  For sentences imposed for offenses committed prior to January 1, 1994, up to 20 days of incentive gain-time may be granted.  If granted, such gain-time shall be credited and applied monthly.
>. . . .
>(7) The department shall adopt rules to implement the granting, forfeiture, restoration, and deletion of gain-time.

Fla. Stat. § 944.275 (2007).

The DOC has adopted provisions of the Florida Administrate Code to provide procedures concerning award of incentive gain time.  Subsection (3) of Section 33-601.101 sets forth detailed

methods for evaluating a prisoner's "institutional adjustment" as reflected in "evaluations from security, work and program components." Specifically with regard to security ratings, the rules provide as follows:

> 1. The security evaluation is the rating of an inmate's institutional adjustment that includes evaluation of all areas of daily institutional routine with the exception of the inmate's work and program assignments. The security rating for the month shall be determined through the review of the four security behavioral objectives, while considering the inmate's capabilities. The security rating is to be determined by observations of the evaluator, notations on the inmate's Housing Officer Contact Card, and information from other staff sources regarding the inmate's behavior. The employee completing the security evaluation shall not complete the inmate's performance evaluation for the same month. The following security behavioral objectives shall be considered when completing the monthly security rating:
>
>     a. Hygiene: grooming and personal cleanliness.
>
>     b. Appearance: care of issued clothing and compliance with uniform regulations.
>
>     c. Conduct: adherence to rules, regulations, procedures, and orders and respect for others.
>
>     d. Maintenance of living quarters: appearance and cleanliness of assigned living area.

Fla. Admin. Code 33-601.101(3)(a)(1). The final determination of an award of incentive gain time is determined by the correctional probation officer or designee and is based on the inmate's overall monthly activities as reflected in the security and performance ratings. Fla. Admin. Code 33-601.101(3)(b). Corrections may be made to the inmate's monthly security, work or program evaluations after the evaluations have already been submitted if a written request stating the reasons for the corrections is submitted to the department head for approval. Fla. Admin. Code 33-601.101(3)(a). The rules provide that incentive gain time awards are generally posted in the inmate's institutional records by the 12th of each month following the month of the award. Fla. Admin. Code 33-601.101(4). An inmate is not considered to have earned any incentive gain time until the month is complete, the evaluations have been submitted, and the award has been determined.   Fla. Admin. Code 33-601.101(3)(c).

The administrative rules provide for notice of and an opportunity to contest the monthly gain time award. Inmates receive written notice of the monthly gain time award within three (3) working days of the last scheduled posting date; additionally, the next scheduled progress report reflects and summarizes the award of gain time made during the reporting period. Fla. Admin. Code 33-601.101(4)(a). An inmate may contest a gain time award or the failure to have received notice of an award by filing a formal grievance no later than the end of the month the award is posted. Fla. Admin. Code 33-601.101(4)(b). An inmate who has timely filed a grievance regarding the failure to have received notice of a monthly gain time award, must file a formal grievance relating to the gain time award itself no later than fifteen (15) days from the date of the response to the formal grievance which addressed the failure to have received notice. Fla. Admin. Code 33-601.101(4)(d). Finally, the administrative rules provide that certain conditions disqualify an inmate for an award of incentive gain time for a certain month, including inmates found guilty of infractions of DOC rules or state laws, and inmates who are out of the DOC's custody on escape status, "out to court" status, or furlough. Fla. Admin. Code 33-601.101(5–6).

In the instant case, Petitioner does not allege that unsatisfactory entries on his 229A's caused him to lose incentive gain time that he had actually earned; rather, he contends the unsatisfactory entries affected his opportunity to earn the yet-unearned gain time. Therefore, based upon Sandin, the undersigned concludes that the opportunity to earn incentive gain time provided by Florida law is not a sufficient liberty interest to invoke the protections of the Due Process Clause. Furthermore, the administrative rules provide that once incentive gain time has been awarded, an inmate is provided notice of the award and an opportunity to contest the amount of incentive gain time awarded, which is more process than is constitutionally required. Accordingly, Petitioner cannot establish that the failure to provide inmates with notice of unsatisfactory entries on 229A's and an opportunity to inspect those forms violates his constitutional rights.

Accordingly, it is respectfully **RECOMMENDED**:

That the habeas petition challenging the DOC's use of Form DC6-229A, the Close Management Daily Record of Segregation, to evaluate inmates' eligibility to earn incentive gain time (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 19th day of November 2008.

Case No. 3:08cv225/MCR/EMT

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**